IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**June 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JENNIFER L. JONES,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-388**     (WorkForce W. Va. Bd. of Rev. Case No. R-2024-0692)

**HHC, LLC,**
**Employer Below, Respondent**

**and**

**SCOTT A. ADKINS, in his capacity as**
**Acting Commissioner of WorkForce West Virginia,**
**Respondent**

**MEMORANDUM DECISION**

Petitioner Jennifer L. Jones appeals the August 28, 2024, decision from the WorkForce West Virginia Board of Review ("Board") which reversed the decision of the administrative law judge ("ALJ") and disqualified Ms. Jones from unemployment compensation benefits following her discharge from employment. Neither Respondent HHC, LLC ("HHC") nor Respondent Scott A. Adkins, in his capacity as the Acting Commissioner of WorkForce West Virginia ("WorkForce") participated in this appeal.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds there is error in the Board's decision but no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the Board's decision is reversed and remanded for further proceedings consistent with this decision.

Ms. Jones was employed by HHC, a heating and cooling installation and repair company, from August 21, 2023, until her termination on February 19, 2024. She was employed as an office manager at HHC's office in Morgantown, West Virginia. HHC used an online timekeeping system that allowed employees to clock in and out via their cell phones. The system included a GPS feature that tracked where employees were located when they clocked in and out. In February 2024, Michael Hunley, managing member of HHC, was reviewing the time system and the locations where his employees clocked in

---

[1] Ms. Jones is represented by Angela M. White, Esq.

1

and out. During this review, he determined that Ms. Jones had clocked in before she arrived at work and had clocked out after she arrived home. Mr. Hunley immediately terminated Ms. Jones for time theft.

After her termination, Ms. Jones filed for unemployment compensation benefits. On March 15, 2024, a claims deputy from WorkForce found Ms. Jones was disqualified from unemployment benefits because HHC presented evidence that showed she was discharged for gross misconduct. On March 15, 2024, Ms. Jones appealed the deputy's decision to an ALJ. The ALJ held a telephonic hearing on April 8, 2024, where only Ms. Jones was present. The ALJ then issued a written decision on that same date which reversed the decision of the deputy. Mr. Hunley appealed this decision to the Board and requested a new hearing arguing he was unable to appear due to an administrative error committed by WorkForce. On May 9, 2024, the Board granted Mr. Hunley's request for a new hearing and remanded this matter back to the ALJ for a de novo hearing. On June 5, 2024, the ALJ held a re-hearing during which Ms. Jones and Mr. Hunley appeared and testified.

Mr. Hunley testified that Ms. Jones had clocked in before she arrived at work and clocked out after she arrived home over twenty different times. He also submitted GPS timecards from HHC's timekeeping system into evidence. He stated that this time theft occurred from the time Ms. Jones began her employment until she was terminated, and he testified that the company does not pay for the time spent commuting to work. Next, Ms. Jones testified that this alleged time theft occurred eleven times and that she had prior permission to work from home on some of the dates in question. For the other dates in question, she testified that she was responsible for answering phone calls and clocked in to take those calls. Ms. Jones admitted that some days she forgot to clock out before leaving work, but she stated she clocked out when she remembered and always corrected those time entries. She also stated that Mr. Hunley did not discuss any of these allegations with her before she was terminated, that she never received a write up or a warning, and that HHC had no employee handbook or rules.

On June 7, 2024, the ALJ issued a written decision which reversed the decision of the deputy and concluded that HHC had not met its burden to establish that Ms. Jones committed gross misconduct. The ALJ found Ms. Jones' testimony regarding the timecard discrepancies to be credible. HHC then appealed the ALJ's decision to the Board. On August 28, 2024, the Board reversed the decision of the ALJ and concluded Ms. Jones had committed gross misconduct because it was reasonable to conclude from the evidence that Ms. Jones knowingly violated company policy by failing to clock in and out of work consistent with the time she was actually working. It is from this order that Ms. Jones now appeals.

In this appeal, our standard of review is as follows:

2

The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994).

On appeal, Ms. Jones asserts two assignments of error. First, she argues the Board erred by reversing the ALJ's decision because the Board is required to give substantial deference to the ALJ's findings since the ALJ is the fact finder and the entity that held a hearing and took evidence. We disagree. "Under the statutory scheme of W.Va. Code, 21A-7-1 *et. seq.*, the findings of the ALJ are recommendations only and are not binding on the Board of Review." *Adkins v. Gatson*, 192 W. Va. 561, 565, 453 S.E.2d 395, 399 (1994). The Supreme Court of Appeals of West Virginia has explicitly held that the "[f]indings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong" and "[t]his standard is not applicable to the Board of Review." *Belt v. Rutledge*, 175 W. Va. 28, 30, 330 S.E.2d 837, 839 (1985). "[T]he provisions of the Unemployment Compensation Law implicitly recognize that the Board of Review has the power to make independent findings of fact upon review of a decision of an Appeal Tribunal." *Id.* For example, West Virginia Code § 21A-7-10 (1972) defines the scope of the Board's review and states the Board "may . . . affirm, modify, or reverse and set aside a decision of an appeal tribunal."[2] Further, "[i]n a judicial proceeding to review a decision of the board, the findings of fact of the board shall have like weight to that accorded to the findings of fact of a trial chancellor or judge in equity procedure." W. Va. Code § 21A-7-21 (1943). The power to reverse the decision of the ALJ is within the Board's power as is articulated in West Virginia Code § 21A-7-10. Further, West Virginia Code § 21A-7-21 makes clear that the Board is permitted to make its own factual findings and that this Court, as a reviewing body, must give weight to the findings of the Board. Accordingly, the Board's decision to reverse the ALJ was not error.

Second, Ms. Jones argues the Board erred in finding she committed "any other gross misconduct" because HHC failed to meet its evidentiary burden. We agree. West Virginia Code § 21A-6-3(2) (2020) recognizes that an employer may challenge a discharged

_____

[2] West Virginia Code § 21A-7-7 (1981) states that cases not related to labor disputes or to disqualification under West Virginia Code § 21A-6-3(4), "shall be heard by an appeal tribunal composed, as the board may direct in particular cases or in particular areas, of a single administrative law judge; a tribunal of three administrative law judges assigned by the board; a member of the board; or the board itself." Accordingly, an "appeal tribunal" as used within this code section may refer to a single ALJ, like in this case.

employee's claim for unemployment benefits by showing the employee was discharged for committing either gross misconduct or simple misconduct. In Syl. Pt. 4, *Dailey v. Bd. of Rev., W. Va. Bureau of Emp. Programs*, 214 W. Va. 419, 421, 589 S.E.2d 797, 799 (2003), the Supreme Court of Appeals of West Virginia defined these two forms of misconduct as follows:

> For purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, an act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A–6–3; (4) arson, theft, larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct may result in termination of employment.

Here, the Board determined that Ms. Jones' conduct met the definition of "any other gross misconduct" under this statute. When misconduct is classified under the "other gross misconduct" provision in West Virginia Code § 21A-6-3(2) and there is no prior written warning, "the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis." *Id.* at 421, 589 S.E.2d at 799, syl. pt. 6. The "placement of a particular act in the category of gross misconduct should be carefully reviewed and should not be undertaken unless it is clear that such acts constitute gross misconduct as defined by the legislature." *Id.* at 427, 539 S.E.2d at 805. "Except where an employee has received a prior written warning, the phrase, 'other gross misconduct,' in West Virginia Code § 21A-6-3(2) evidences the legislature's intent to provide some element of discretion in the Board and reviewing courts, based upon the peculiar facts of each case." *Id.* at 421, 589 S.E.2d at 799, syl. pt. 5.

Based on the record of this case, the Board erred when it determined Ms. Jones' conduct constituted "other gross misconduct" because the peculiar facts of this case do not rise "to a level of seriousness equal to or exceeding that of the other specifically enumerated items [in West Virginia Code § 21A–6–3(2)]." *Id.* at 421, 589 S.E.2d at 799, syl. pt. 6. HHC failed to present evidence to show there was a company policy prohibiting this conduct and Ms. Jones presented some evidence to show she was permitted, at times, to work and take phone calls at locations other than her office. Considering the totality of the circumstances in this case, Ms. Jones' conduct does not meet the definition of "other gross misconduct" and the Board's decision is vacated. Further, we find that Ms. Jones's conduct here is best classified as simple misconduct because her conduct constituted willful and

wanton disregard of her employer's interests. *See id.* at 427-28, 589 S.E.2d at 805-06 ("[F]or purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, simple misconduct is conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.") Her actions did not involve destruction of property, assault, alcohol or controlled substances, arson, theft, larceny, fraud, embezzlement, and there was no instance where she received a prior written notice that her actions may result in termination. *See* W. Va. Code § 21A-6-3.

Accordingly, we reverse the Board's August 28, 2024, decision to the extent it found Ms. Jones has committed "other gross misconduct," and we find that Ms. Jones committed simple misconduct. We remand to the Board for entry of an order consistent with this decision.

Reversed and Remanded.


**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White